ESTATE OF EDWARD F. PIPE, DECEASED, NETTIE M. PIPE, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39831. Filed October 22, 1954.

*Edmund W. Pavenstedt, Esq.,* for the petitioner.
*Rigmor O. Carlsen, Esq.,* for the respondent.

OPINION.

OPPER, *Judge:* A deficiency of $21,861.98 in estate tax is here being contested, of which $19,310.29 is in controversy. The sole issue is whether decedent's disposition of certain property qualifies for the marital deduction provided by section 812 (e), Internal Revenue Code of 1939.

All of the facts have been stipulated. They are found accordingly. The estate tax return was filed with the collector of internal revenue for the fourteenth district of New York. Decedent, who died a resident of White Plains, New York, on September 20, 1948, was survived by his widow who became executrix of his estate.

The will which was admitted to probate November 10, 1948, after devising to his wife all real property absolutely and forever, together with certain personal effects, provides in part:

THIRD: All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situated, hereinafter referred to as my residuary estate", I give, devise and bequeath to my wife, NETTIE M. PIPE, to have and to hold the same for the term of her natural life, with full power to use, enjoy, sell or dispose of the income and principal thereof, or any part thereof, for such purposes or in such manner as she in her uncontrolled discretion may choose, it being my desire to place no restraint on her in any respect concerning the absolute right of full disposition and use of the whole or any part of said income or principal of my residuary estate, except that she shall have no power over the disposition of such part thereof as remains unexpended at the time of her death.

I direct that my said wife shall not be required to file any bond or other security for the protection of any remainderman interested in my said residuary estate, and she shall not be limited in investing and reinvesting the same to securities of the kind authorized by law for the investment of trust funds. During the life of my said wife, any stocks, bonds or other securities may be registered in the name of my said wife alone as if she were the absolute owner of such property, and no one dealing with her with respect to my residuary estate shall be responsible for the application of any proceeds of sale or other disposition of property.

FOURTH: On the death of my said wife * * * I give and bequeath all * * * of the property which can be identified at my wife's death as a part of my residuary estate * * * absolutely, to [certain named legatees].

The value at the optional valuation date of the property passing under article THIRD of the will was $217,429.84, all of which was included in the gross estate.

The question presented involves the construction of section 812 (e) of the estate tax law as enacted [1] in 1948: Does property bequeathed

---

[1] Internal Revenue Code of 1939:

SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

*     *     *     *     *     *     *

to a surviving wife for life, with unlimited powers of invasion or disposition during her lifetime, but with remainders over as to any residue left at her death, qualify for the marital deduction or does the wife acquire merely a "terminable interest" included in the exception provided in subsection (e) (1) (B) of the same section.[2]

Petitioner's contention that what the wife took is the equivalent of a fee and consequently cannot be "terminable" does not seem to be advanced with any great conviction. It is in fact inconsistent with petitioner's own alternative argument and with an analysis of the New York law.

Section 149, New York Real Property Law, applicable as well to personalty, modifies the Rule in Shelley's Case by providing:

Where an absolute power of disposition, not accompanied by a trust, is given to the owner of a particular estate for life * * * such estate is changed into a fee absolute *in respect to the rights of creditors, purchasers and incumbrancers,*

---

Footnote 1—Continued.

  (e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

    (1) ALLOWANCE OF MARITAL DEDUCTION.—

      (A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

      *      *      *      *      *      *

      (F) Trust with Power of Appointment in Surviving Spouse.—In the case of an interest in property passing from the decedent in trust, if under the terms of the trust the surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse—

        (i) the interest so passing shall, for the purposes of subparagraph (A), be considered as passing to the surviving spouse, and

        (ii) no part of the interest so passing shall, for the purposes of subparagraph (B) (i), be considered as passing to any person other than the surviving spouse.

This subparagraph shall be applicable only if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

[2] (B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

    (i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

    (ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ; and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under clauses (i) and (ii))—

    (iii) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For the purposes of this subparagraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

*but subject to any future estate limited thereon, in case the power of absolute disposition is not executed * * * [Emphasis added.]* [3]

The intention of the testator is, as always, paramount.

Thus, in *In re Mead's Will*, 115 Misc. 481, 190 N. Y. S. 123, the Surrogate was of the opinion that remainders over were not established with sufficient assurance to restrict the application of section 153, New York Real Property Law,[4] so that the power of disposition by the life tenants was "absolute";[5] while in *Terry* v. *Wiggins*, 47 N. Y. 512, a provision similar to that now before us was said to "clearly indicate an intention" to limit the wife's power of disposition to her life so that "By the will, the wife took an estate for life, * * * with remainder over at her death to the religious society, with power in the wife during the continuance of the life estate to defeat the remainder * * *," a description sufficiently apt to be applicable to the present situation. And see *Estate of Michael Melamid*, 22 T. C. 966; *In re Brower's Estate*, 278 App. Div. 851, 104 N. Y. S. 2d 658, affd. 304 N. Y. 661, 107 N. E. 2d 589.

Inconsistently, as it seems to us, petitioner insists as an alternative that what was accomplished was the creation of a trust, of which the wife was trustee and life beneficiary, with remainders over, but with an unqualified lifetime power over the corpus not only of disposition but of enjoyment and consumption. This is said to bring the situation within section 812 (e) (1) (F).[6]

That the life tenant in possession is often loosely referred to by the term "trustee" in the New York cases cannot be denied.[7] The references fall generally into two groups. In some, such as *Smith et al.* v. *Van Ostrand*, 64 N. Y. 278, for example, a restriction is placed by the will on the invasion of corpus. In that case only so much as was necessary "to her support" could be taken from principal. In *Leggett* v. *Stevens*, 185 N. Y. 70, 77 N. E. 874, the use was permitted by the

---

[3] In this respect the present case is stronger for respondent than was the second issue in *Estate of Frank E. Tingley*, 22 T. C. 402.

[4] SEC. 153. When power of disposition absolute
Every power of disposition by means of which the grantee is enabled, in his lifetime, to dispose of the entire fee for his own benefit, is deemed absolute.

[5] But see *In Re Davies' Estate*, 242 N. Y. 196, 151 N. E. 205, 206, where the language of the will was similar to that now in controversy. "* * * as legatee he [the husband] received a life interest therein, with power 'to expend the principal as he may see fit,' and even though the power to expend was untrammeled by any conditions, it did not include the right to transfer it to himself so that he might hold it in fee absolute."

[6] See footnote 1, *supra*.

[7] This is not always so. In *Rose* v. *Hatch*, 125 N. Y. 427, 26 N. E. 467, for example, an express trust in favor of the husband, with a power of disposition limited to his personal needs was held to establish not a trust, but a legal life estate, preventing the merger with the fee, even as to creditors, because of the limitation. Holding that in such a situation a trust could not exist, the Court of Appeals said: "By the second clause of the will there was an attempt to make Asa L. Hatch [the husband] trustee for his own benefit during his life. Such a trust cannot be created. * * * Asa L. Hatch was, however, entitled to the possession of the land, and also to the rents and profits thereof, * * * it is clear that he took a legal estate in the land for life."

surviving wife "for her own comfort and support." [8] In other instances the bequest has been construed as forbidding any invasion even with language like "use and enjoy" the property, as in *In re McDougall*, 141 N. Y. 21, 35 N. E. 961, 963:

On the contrary, we think the testator meant to give the widow nothing but an estate for her life or widowhood, terminable at the happening of either event, and that the remaindermen were entitled to receive at such time the *whole* corpus of the estate. [Emphasis added.]

See also *In re Ungrich*, 48 App. Div. 594, 62 N. Y. S. 975, affirmed per curiam 166 N. Y. 618, 59 N. E. 1131; *In re Hamlin*, 141 App. Div. 318, 126 N. Y. S. 396. The employment of the trust concept in such situations is even less significant on the present point.

Where the power of disposition and invasion, though restricted to the period of the life tenancy, is unlimited, the "trust," if any, is said to attach not to the property received by the life tenant, but at most to that which remains on his death. [9] That is apparently the outer limit of the present situation.

The rule is enunciated in *Seaward* v. *Davis*, 198 N. Y. 415, 91 N. E. 1107. "It is doubtless true that *ordinarily* a life tenant in possession of personal property is a trustee *to preserve the principal* for the remaindermen to whom it may pass on his death. In this case, however, *the widow had the right to dispose of the property in her lifetime, and as to such property as she did dispose of* neither she nor her executor was bound to account to the remaindermen because they had no interest in it." (Emphasis added.) As petitioner expresses it, the question in that case "was the quantum of the trust with respect to which her executor must account: Was it the full amount she received from her husband's estate *or merely the amount which remained undisposed of at her death?*" (Emphasis added.)

We think it follows that even if there was an implied trust here, and even if, contrary to respondent's contention, such a "trust" is covered by section 812 (e) (1) (F), and even if, in spite of the apparent language of the New York statute,[10] the wife could then use for herself the corpus of the trust, as obviously the testator intended, and even if that question is to be governed by the local law of each

[8] In *Peck* v. *Smith*, 227 N. Y. 228, 125 N. E. 91, 92, the trial court "* * * found that * * * his widow had an absolute power of disposition, irrespective of her needs, and could make a valid gift * * *" of the properties. "These findings were reversed by the Appellate Division * * * it found that the transfer was not made for the use, comfort, and benefit of Mrs. Peck * * *." The Court of Appeals in turn reversed, but on the ground that the plaintiffs had no capacity to sue.

[9] "This disposition * * * would entitle the plaintiffs to so much of the fund as on her death remained unexpended, * * * *and this portion of the fund* she held in trust for them." *Smith et al.* v. *Van Ostrand, supra.* (Emphasis added.)

[10] "* * * A power, vested in a person in his capacity as trustee of an express trust, to distribute principal to himself cannot be exercised by him * * *; if there is no trustee qualified to execute the power, its execution devolves on the supreme court." Sec. 141, N. Y. Real Property Law. And see *Rose* v. *Hatch, supra,* footnote 7.

of the 48 States, but cf. *Lyeth* v. *Hoey*, 305 U. S. 188, still the corpus constituting this trust would not only be less than the total share left to the wife, see *Estate of Louis B. Hoffenberg*, 22 T. C. 1185, but it would be so indefinite as to render impossible of identification at decedent's death what property is subject to the trust and therefore intended to be covered by section 812 (e) (1) (F). This seems to us an adequate reason for presuming that it was not the congressional intent to include this type of "trust" in the marital deduction provisions of that subsection.

Generally speaking, the "terminable interest" concept was devised for the purpose of assuring that if the property bequeathed to the spouse was to be excluded from gross estate with respect to the decedent, it would be adequately integrated in the spouse's estate so that on her death it would not escape the death tax a second time. As petitioner expresses it, "The basic principle * * * is that the spouse first to die shall be permitted to pass on to the surviving spouse free of estate tax up to one-half of his or her estate, provided only that the terms of the transfer are such that this property will be taxable in the estate of the surviving spouse."

In the premises, the existence and scope of any "trust" established for the wife by decedent is so doubtful that it would scarcely seem logical to include the property in the wife's estate, if, when she dies, the corpus has neither been consumed nor donated. In that event, her failure to exercise the power of invasion will make it more reasonable to think of the remaindermen as succeeding to property left them by decedent.[11] We think the basic purpose of section 812 (e) will hence be more adequately accomplished by considering the wife's interests here as "terminable," and by inclusion of the property in decedent's estate. See *Estate of Louis B. Hoffenberg; Estate of Michael Melamid*, both *supra*.

For the purpose of correcting an adjustment now conceded by respondent, and of taking into consideration estate expenses subsequently incurred,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

---

[11] In *Helvering* v. *Safe Deposit Co.* (Reynolds Est.), 316 U. S. 56, the Supreme Court had before it the question of including in gross estate as an "interest" under section 302 (a), Revenue Act of 1926, the predecessor of section 811 (a), property as to which decedent had a qualified beneficial life estate and a testamentary power of appointment which was unexercised at his death. The question was answered in the negative by a unanimous court. Four of the justices dissenting on another point, used this language: "It is conceded that no part of either estate passed by virtue of the execution by the decedent of the powers of appointment with which he was clothed. The property passed under the deed and wills of his parents, and that passage was the taxable event."

While under section 811 (f) property covered by certain unexercised powers of appointment is now taxable, it is evident from the restrictive language of section 812 (e) that Congress did not have this simple situation in mind in granting the marital deduction. We do not understand petitioner to contend otherwise.