In the Matter of the Judicial Settlement of the Account of Proceedings of JOANNA R. CLEARY, as Executrix, etc., of ANNA FITZPATRICK, Also Known as ANNIE FITZPATRICK, Deceased, as to the Acts and Doings of the Said ANNA FITZPATRICK, Also Known as ANNIE FITZPATRICK, as Executrix, etc., of SARAH E. FITZPATRICK, Deceased, Appellant.*

T. GEORGE HODGES, as Administrator with the Will Annexed of SARAH E. FITZPATRICK, Deceased, Respondent.

HASBROUCK, J. (dissenting). By the will of Sarah E. Fitzpatrick she gave her real estate situated at 1807 Third avenue, Watervliet, N. Y., to her sister, Anna Fitzpatrick. The will was admitted to probate January 7, 1926. On May 13, 1926, Anna Fitzpatrick deeded one-half of that land to Joanna R. Cleary for a stated consideration of $10. On July 18, 1927, Anna Fitzpatrick, individually and as executrix of the estate of her sister Sarah, deeded the remaining half of said real estate to Joanna R. Cleary for a stated consideration of $4,000. It is provided by the statute (Real Prop. Law, § 149) that " Where an absolute power of disposition, not accompanied by a trust, is given to the owner of a particular estate for life or for years, such estate is changed into a fee absolute in respect to the rights of creditors, purchasers and incumbrancers, but subject to any future estates limited thereon, in case the power of absolute disposition is not executed, and the property is not sold for the satisfaction of debts." (See, also, § 153; Matter of Davies, 242 N. Y. 196, 201.) This absolute power was exercised long prior to the issue of the citation by which the proceedings for the accounting in the Surrogate's Court of Albany county were instituted by Joanna R. Cleary. What jurisdiction was left in the surrogate when Anna exercised the power given her under Sarah's will? Joanna was the purchaser named in the second deed. Can any question remain that Anna sold for her own benefit? It must be conceded that her deed of the land was not for the benefit of the estate; it was for her own benefit entirely. Her grantee, therefore, stands as a purchaser from her as an individual. If such be the case, Joanna was not dealing with the estate when she received the deed of July 18, 1927. What she received was not a part of Sarah E. Fitzpatrick's property. It had become by the exercise of the power the property of Anna. The question as to whether Anna's individual contract and deed were improvident, unconscionable and inequitable was not within the jurisdiction of the surrogate. Only where the sale made by Anna was for the benefit of the estate could the surrogate have power to function. Clearly he has no power to try the question of title between Sarah's devisees and Joanna Cleary, who has no claim to this land under Sarah's will. If the surrogate be without jurisdiction in the premises, it is trite that the parties could not by consent confer jurisdiction upon him. Nor am

* Revd., 252 N. Y. 121.

I convinced, if the surrogate had jurisdiction, that the transaction involved in the agreement, deed and mortgage is unconscionable. Property owners have the right to make improvident and inequitable bargains. They can give their property away. It was not held by the surrogate that Anna Fitzpatrick was incompetent to contract and deed. It was not held that she was deceived and defrauded. It was held that the contract was unconscionable. And what is unconscionable? Chief Judge Fuller of the United States Supreme Court has said it is a bargain " such as no man in his senses * * * would make on the one hand and as no honest and fair man would accept on the other." (Hume v. United States, 132 U. S. 406, 411–415.) Now the bargain which Anna Fitzpatrick made was for support and maintenance by Joanna in her household or elsewhere during Anna's natural life and expectancy under mortality tables of two and a half years. Anna took the mortgage from Joanna to secure her against Joanna's death. But two and one-half years are 912 days and the application of $4,000 to such number of days would call for compensation for her maintenance at $4.40 a day. If it be unconscionable to demand $4.40 a day for the keep of an old woman in a pleasant home by people who have care for her, the court below has an idea of values scarcely in keeping with the times. If we are to sustain the determination of the surrogate that an old woman cannot make a bargain for her keep at the rate of $4.40 a day with a good room, good food and an agreeable environment what can the courts approve as not unconscionable? When was age divested of its right to buy comfort? What is age to do? Suffer and languish because courts will not permit it to pay the cost of comfort at the price demanded? Is old age attractive? Do the young want the old around? Do the old fit into the scheme of joyous life? " Whatever men may say of it, old age is still old age." Only those who have had the care of old people . or who are old themselves know what it means to maintain and support them. My impression is that the agreement was a good one for Anna Fitzpatrick and that she was fortunate to be able to make it. If she died before the expiration of her contract she died surrounded by household comforts and among those she loved and such compensations are beyond the power of the dollar mark. I think the decree of the surrogate should be reversed and the proceeding dismissed.